**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE SUBPOENAS SERVED ON EDWARD GILLESPIE AND JOHN MORGAN** | CASE NO. 1:18-MC-_____ |

**MOVANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
TO COMPEL COMPLIANCE WITH SUBPOENAS SERVED ON
EDWARD GILLESPIE AND JOHN MORGAN**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 4

      A.     Plaintiffs' Lawsuit .................................................................................................. 4

      B.     Mr. Gillespie and the RSLC Target Ohio ........................................................... 5

      C.     Ohio Republicans Retain Mr. Morgan .................................................................. 6

      D.     Respondents Refuse to Search for Responsive Documents .................................. 6

ARGUMENT .............................................................................................................................. 9

I.     Legal Standard ................................................................................................................ 9

      II.     Mr. Gillespie's and Mr. Morgan's Files Contain Information Directly
             Relevant to Core Issues in Plaintiffs' Constitutional Claims .............................. 11

      A.     The Search Parameters Applied by Mr. Gillespie Are Not Likely to
             Capture All Responsive Documents .................................................................... 11

      B.     Mr. Morgan Must Also Apply Plaintiffs' Proposed Search Terms ..................... 13

III.    Plaintiffs' Subpoenas Seek Documents That Are Central to their Claims ...................... 14

      A.     Mr. Gillespie's and Mr. Morgan's Claims that Relevant Documents in
             Their Files Are Likely Duplicative of Those in Other Persons' Files is
             Insufficient to Establish a Lack of Proportionality .............................................. 15

      B.     The Cost of Complying with Plaintiffs' Subpoenas is Slight in
             Comparison to Issues in the Case and the Significance of the Requested
             Files in Resolving Those Issues .......................................................................... 16

CONCLUSION ........................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BuzzFeed, Inc. v. U.S. Dep't of Justice*,
  No. 17-MC-02429 (APM), 2018 WL 3719231 (D.D.C. Aug. 3, 2018) .................................10

*Moore v. Napolitano*,
  No. CIV.A. 00-953, 2009 WL 2450280 (D.D.C. Aug. 7, 2009) .............................................16

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
  322 F.R.D. 1 (D.D.C. 2017).......................................................................................10, 16, 17

*U.S. ex rel. Shamesh v. CA, Inc.*,
  314 F.R.D. 1 (D.D.C. 2016).......................................................................................10, 14

*United States v. AT&T Inc.*,
  No. 1.11-cv-01560, 2011 WL 5347178 (D.D.C. Nov. 6, 2011) .............................................15

**Other Authorities**

Fed. R. Civ. P. 26.......................................................................................9, 10, 14, 16

Fed. R. Civ. P. 26(b)(1).....................................................................................................9

Fed. R. Civ. P. 45(a)(1)(A)(iii) ........................................................................................9

Movants Ohio A. Philip Randolph Institute, League of Women Voters of Ohio, the Ohio State University College Democrats, Northeast Ohio Young Black Democrats, Hamilton County Young Democrats, Linda Goldenhar, Douglas Burks, Sarah Inskeep, Cynthia Libster, Kathryn Deitsch, Luann Boothe, Mark John Griffiths, Lawrence Nadler, Chitra Walker, Tristan Rader, Ria Megnin, Andrew Harris, Aaron Dagres, Elizabeth Myer, Beth Hutton, Teresa Thobaben, and Constance Rubin ("Plaintiffs") submit this brief in support of their motion to compel compliance with subpoenas served on the Edward Gillespie and John Morgan.

## **INTRODUCTION**

Plaintiffs are challenging Ohio's current United States congressional redistricting plan (the "plan" or "map") as an unconstitutional partisan gerrymander.  Plaintiffs claim that the 2011 map intentionally discriminates against them by drawing congressional district lines that burden their fundamental rights, including: (1) their First Amendment right to associate for the advancement of their political beliefs, to express their political views, and to participate in the political process; (2) their First and Fourteenth Amendment right to cast a meaningful vote; and (3) their Fourteenth Amendment right to equal protection under the law.  Plaintiffs also claim that the 2011 map exceeds powers granted to the states under Article I of the Constitution. Through their lawsuit, which is being litigated on an expedited basis in the U.S. District Court for the Southern District of Ohio, *see* Dkt. No. 41 (setting a trial date of March 4, 2019), Plaintiffs seek a declaration that the map is unconstitutional and an order enjoining any further elections under the map and requiring the implementation of a new map for use in future elections.

Plaintiffs allege that national Republicans, including the Republican State Leadership Committee ("RSLC") and the State Government Leadership Foundation ("SGLF"), with full cooperation from Ohio Republicans, orchestrated a campaign to win control of both houses of

1

the Ohio legislature for the purposes of controlling the redistricting process and creating an

enduring Republican majority in Ohio's Congressional delegation.

To obtain documents supporting those allegations, Plaintiffs duly served Edward

Gillespie—the chairman of the RSLC during the relevant period—and John Morgan—a

redistricting consultant retained by Ohio Republicans—with tailored Rule 45 subpoenas seeking

documents concerning the Ohio redistricting process.  Communications between Gillespie and

Morgan, other national Republicans, and Republican leaders in Ohio are likely to be highly

relevant evidence of national and state Republicans' intent to create a map that intentionally

discriminates against Plaintiffs and deprives them of their constitutional rights.

Specifically:

- As chairman of the RSLC, Mr. Gillespie was a central architect of national
  Republicans' efforts to control the redistricting process in Ohio by guiding state
  Republican officials in creating a map to maximize the Republican share of
  Ohio's congressional delegation.  Mr. Gillespie was in frequent correspondence
  with national Republican operatives responsible for the RSLC's redistricting
  campaign, and he met frequently with donors and state and national Republican
  officials to garner their support for the initiative.  As a result, his files are likely to
  include, among other things, documentation revealing the degree of coordination
  between national and state Republicans, as well as national and state Republicans'
  intent to entrench a Republican majority in Ohio's congressional delegation
  through unconstitutional means.

- Mr. Morgan was retained to assist the Ohio Republican officials responsible for
  drawing the map challenged by Plaintiffs.  Records produced by Mr. Morgan

show that he submitted invoices for thousands of dollars to counsel to Ohio

Republican officials in the summer and fall of 2011 for "*map drawing services*"

in connection with the challenged map.  Even before he was retained by Ohio

Republicans, he authored redistricting training materials distributed by the

Republican National Committee ("RNC") and he is known to have led at least one

RNC training attended by the Chief Legal Counsel for the Ohio House

Republican Caucus.  As a result, his files are also likely to include, among other

things, documentation revealing the degree of coordination between national and

state Republicans and national and state Republicans' intent to entrench a

Republican majority in the state's congressional delegation through

unconstitutional means.

In responding to their subpoenas, Mr. Gillespie and Mr. Morgan have refused to conduct

a thorough and transparent examination of their custodial files.  Mr. Gillespie agreed only to

produce responsive documents that hit on *two* search terms and fall within a narrow time frame.

Mr. Gillespie similarly refused to search all email accounts that he was known to use for RSLC

and redistricting-related purposes.  For this part, Mr. Morgan has not agreed to apply *any* search

terms in order to identify responsive documents in his possession, custody, or control.  While he

has made vague representations that "he searched his physical and electronic files for documents

related to the Ohio congressional redistricting following the 2010 census," to date he has not

provided information about the search parameters he used when reviewing his files.

To attempt to limit any burden imposed in responding to their subpoenas, Plaintiffs have

proposed reasonable search terms and time limitations several times.  In response, Mr. Gillespie

and Mr. Morgan have refused to consider potential modifications to their original searches or to

propose an alternative method of identifying additional responsive documents in their possession.  Moreover, Mr. Gillespie stated that any relevant materials in his possession will also be in the files of the RSLC, while ignoring his use of a personal email account (edwardwgillespie@aol.com) for matters related to redistricting.  Similarly, Mr. Morgan asserted that a broader search would be expensive and would result in reproducing documents that have already been produced.  Yet all that has been produced for the entirety of his engagement by Ohio Republicans is data used in the creation of the map and a series of invoices.

Mr. Gillespie's and Mr. Morgan's objections to expanding their search lack merit.  Accordingly, Plaintiffs respectfully request the Court enter an order compelling Mr. Gillespie and Mr. Morgan to adopt the search parameters proposed by Plaintiffs and produce all relevant documents from their files that result from their review.

## BACKGROUND

### A.  Plaintiffs' Lawsuit

Under Ohio law, the Ohio General Assembly, with the advice and assistance of the bipartisan Legislative Task Force on Redistricting, is responsible for crafting and adopting Ohio's congressional map.  Plaintiffs allege, however, that Ohio's 2011 congressional map was actually created by a team of state and national Republican operatives, initially in secret.  Declaration of Michael Baker in Support of Plaintiffs' Motion to Compel ("Baker Decl."), Ex. A ¶¶ 3, 44-69.  Mr. Gillespie and Mr. Morgan were central participants in that effort.

Plaintiffs allege that in anticipation of the 2010 Census, the RSLC formulated a strategy to solidify and increase Republican control of state legislatures in states where the congressional redistricting process would be controlled by those legislative bodies.  *Id.*  To implement this strategy, the RSLC organized the REDistricting Majority Project ("REDMAP").  The purpose of

the project according to REDMAP documents was "straightforward": "[c]ontrolling the redistricting process in these states [to] have the greatest impact on determining how both state legislative and congressional district boundaries would be drawn" and thereby "maintain a Republican stronghold in the U.S. House of Representatives for the next decade." *Id.* ¶ 45.

### B.    Mr. Gillespie and the RSLC Target Ohio

Ohio was one of the states targeted by the RSLC under REDMAP.  *See* Baker Decl., Ex. B.  Plaintiffs allege that the RSLC spent nearly $1 million on races for the Ohio House of Representatives in advance of the 2010 election, helping to flip control of that body and bring Ohio under the single-party control of the Republican Party.  Baker Decl., Ex. A ¶ 46.  Mr. Gillespie, who joined the RSLC in January 2010, was serving as national chairman of the RSLC at the time.

Following the November 2010 elections, national Republican Party organizations, including the RSLC, shifted their focus to helping Republican state officials draw congressional maps that would maximize the likelihood that Republican candidates would be elected to Congress and state legislatures.  *Id.* ¶ 47.  Thus, in a letter to all Republican state legislative leaders nationwide, Chris Jankowski, the President and Chief Executive Officer of the RSLC, wrote:

> We know the ongoing redistricting process will impact the legislative lines that we will have to defend in 2012 and beyond.  Therefore, we have taken the initiative to retain a team of seasoned redistricting experts that we will make available to you at no cost to your caucus for assistance.  We urge you to use them as a key resource for technical advice as you undergo this process.

*Id.*; *see also* Baker Decl., Ex. G at 14.  He assured the state legislative leaders that "the entirety of this effort" would be paid for through its 501(c)(4) arm, the State Government Leadership Foundation ("SGLF").  *Id.*

### C.      Ohio Republicans Retain Mr. Morgan

Mr. Morgan was a known expert in redistricting prior to the 2011 redistricting in Ohio. In May 2010, the Republican National Committee conducted a training session on redistricting led by Mr. Morgan.  The theme was "keep it secret, keep it safe."  The training was attended by the Chief Legal Counsel for the Ohio House Republican Caucus.  Baker Decl., Ex. A ¶ 48; Ex. C.

Ohio Republican officials subsequently retained Mr. Morgan, through their outside legal counsel, as a redistricting consultant for the 2011 redistricting.  Records produced by Mr. Morgan show that he submitted invoices for thousands of dollars for services rendered to Ohio Republican officials in the summer and fall of 2011.  The invoices describe his work as "technical and *map drawing services*," in connection with the very map at issue in Plaintiffs' present challenge.  *See* Baker Decl., Ex. A ¶ 54; Ex. D.

### D.  Respondents Refuse to Search for Responsive Documents

Throughout the meet and confer process, Plaintiffs have sought documents from Mr. Gillespie and Mr. Morgan on the basis that they are likely sources of relevant information.

On June 18, 2018, Plaintiffs served a subpoena for the production of documents on Mr. Gillespie ("Gillespie Subpoena").  Baker Decl., Ex. G.  On June 22, 2018, Plaintiffs served Mr. Morgan with a subpoena for the production of documents ("Morgan Subpoena").  Baker Decl., Ex. H.  Mr. Gillespie served objections and responses to the subpoena on July 2, 2018.  Baker Decl., Ex. I.  Mr. Morgan served his objections and responses to his subpoena on July 6, 2018.  Baker Decl., Ex. J.  On July 13, 2018, counsel for Mr. Gillespie informed counsel for Plaintiffs that Mr. Gillespie "reviewed his files and could not locate any materials regarding the drawing of the Ohio congressional map in 2011."  Baker Decl., Ex. K.

On July 20, 2018, Plaintiffs requested a meet and confer with counsel for Mr. Gillespie and Mr. Morgan to discuss the subpoenas.  Baker Decl., Ex. L.  On July 26, during the meet and confer, Mr. Gillespie's counsel informed Plaintiffs that in searching for responsive documents in Mr. Gillespie's files, he limited his search of his electronic files to documents created between February 1, 2011, and December 31, 2011, and that hit on only two search terms: "Ohio" and "redistrict!".  Mr. Morgan, on the other hand, searched his files for documents responsive the subpoenas without running search terms, and then produced only a small set of documents.[1]

Plaintiffs objected to the sufficiency of these searches and requested that Mr. Gillespie broaden his search parameters for reviewing his files to include all documents created between January 1, 2009, and December 31, 2012, and to consider a more comprehensive set of search terms.  Plaintiffs also requested that Mr. Morgan apply these same parameters.  Mr. Gillespie and Mr. Morgan committed to providing Plaintiffs with a letter memorializing their search parameters, but failed to send that letter.

On August 2, 2018, Plaintiffs wrote to counsel for Mr. Gillespie and Mr. Morgan to memorialize the July 26 meet and confer, including their objections to the sufficiency of Mr. Gillespie's and Mr. Morgan's review of their files, and proposed a list of tailored search terms that included a list of relevant terms related to redistricting in Ohio (e.g. "map", "Ohio", "redistrict", "bunker", "Timken", and "draw" with root expanders) ("Ohio Redistricting

---

[1] Plaintiffs understood, based on the July 26 meet and confer, that Mr. Morgan applied the same restrictive search terms as Mr. Gillespie and repeated that understanding in correspondence with Mr. Gillespie and Mr. Morgan.  Mr. Morgan has since corrected Plaintiffs by informing them that he did not apply search terms to his files.  *See* Baker Decl., Ex. N.

Terms")[2] and associated with individual actors involved in the 2011 redistricting of Ohio's congressional map ("Name Terms").  Baker Decl., Ex. M.

On August 8, 2018, Plaintiffs, and counsel for Mr. Gillespie and Mr. Morgan held a second met and confer.  Plaintiffs reiterated their objections to Mr. Gillespie's and Mr. Morgan's searches of their files.  Counsel for Mr. Gillespie and Mr. Morgan committed to sending a letter stating whether they would agree to Plaintiffs' requests with respect to time period limitations and search terms.  Counsel failed to send that letter.

On August 13, 2018, Plaintiffs sent counsel a letter summarizing the outstanding issues between the parties, including Plaintiffs' request with respect to time period limitations and search terms, and asked for a response by the end of the day on August 15, 2018, when the parties were scheduled to have a third meet and confer.  Baker Decl., Ex. N.

After Plaintiffs rejected a request to delay the meet and confer (sent less than an hour before the scheduled call), counsel for Mr. Gillespie and Mr. Morgan failed to appear at the scheduled meet and confer.  Baker Decl. ¶ 9.  Instead, they sent Plaintiffs a letter on August 15, 2018, that addressed other outstanding issues between the parties, but merely restated their earlier position as to their search of Mr. Gillespie's and Mr. Morgan's files: they would not conduct any search beyond the minimal search that they had already conducted.  Baker Decl., Ex. O.

---

[2] The search term "bunker" was proposed to identify documents discussing a hotel room at the DoubleTree Hotel in Columbus, Ohio, referred to as "the bunker," that was used in secret by national and state Republican operatives and officials engaged in the redistricting.  Plaintiff allege that no Democratic officials or operatives were able to access the bunker.  The search term "Timken" was proposed to identify documents discussing a last-minute request, by the executive director of a political organization affiliated with Speaker of the U.S. House of Representatives John Boehner, to move the headquarters of the Timken Company into Representative Jim Renacci's district to preserve a source of campaign donations.

Plaintiffs responded by letter on August 20, 2018.  In an attempt to bridge the gap between the parties, Plaintiffs offered to shrink their proposed time period by a year to January 1, 2010 through December 31, 2012, and remove several search terms from their proposed list. Baker Decl., Ex. P.  By letter dated August 23, 2018, counsel for Mr. Gillespie and Mr. Morgan rejected Plaintiffs' proposal that they apply these search terms, saying that, under their existing search parameters, Mr. Gillespie did not have any materials related to the "Ohio congressional redistricting following the 2010 census" and Mr. Morgan had already produced all responsive documents.  Baker Decl., Ex. R.  Counsel for Mr. Gillespie said expanding the search terms would be burdensome and expensive, and result in review and production of documents that were irrelevant or duplicative of documents in the RSLC's and SGLF's files.  *Id.* at 2.  Counsel for Mr. Morgan likewise said that applying search terms would be burdensome and expensive, and result in review and reproduction of documents that were irrelevant or duplicative of documents—presumably the receipts and data—already produced.  *Id.* at 3.

By letter dated August 24, Plaintiffs made one final attempt to bridge the gap, adding additional limiters to their proposed search terms.  Baker Decl., Ex. S.  On August 28, Mr. Gillespie and Mr. Morgan refused, again, to change their search parameters.  Baker Decl., Ex. T.

## ARGUMENT

### I.    Legal Standard

Federal Rule of Civil Procedure 26 permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ.

P. 45(a)(1)(A)(iii) (providing for the issuance of a subpoena "command[ing] each person to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control").  Relevancy within the meaning of Rule 26 is "to be 'construed broadly to encompass any matter that bears on, or that reasonable could lead to other mater that could bear on' any party's claim or defense."  *U.S. ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

On a motion to compel discovery under Rule 45, the moving party bears the burden of establishing that the information sought is relevant under Rule 26.  *BuzzFeed, Inc. v. U.S. Dep't of Justice*, No. 17-MC-02429 (APM), 2018 WL 3719231, at *5 (D.D.C. Aug. 3, 2018); *U.S. ex rel. Shamesh*, 314 F.R.D. at 8.  If the movant makes this initial showing, the burden then shifts to the party resisting discovery to show why the discovery is objectionable.  *U.S. ex rel. Shamesh*, 314 F.R.D. at 8.  Thus, if the information sought is relevant, it is the opponent's burden to demonstrate that relevant information is otherwise not discoverable because it is not proportional to the needs of the case.  *See id.*

To determine whether a discovery request is proportional, courts weigh the following six factors: "(1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (quoting *Williams v. BASF Catalysts, LLC*, No. 11-1754, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017)).

## II.    Mr. Gillespie's and Mr. Morgan's Files Contain Information Directly Relevant to Core Issues in Plaintiffs' Constitutional Claims

Mr. Gillespie, as the chairman of the RSLC, and Mr. Morgan, as a consultant retained to provide technical assistance to Ohio Republicans, are important sources of information relevant to Plaintiffs' claim that national and state Republican officials intentionally drew a map in 2011 that unconstitutionally discriminates against Plaintiffs. Their searches, to date, are not likely to capture that information.

### A.   The Search Parameters Applied by Mr. Gillespie Are Not Likely to Capture All Responsive Documents

As chairman of the RSLC, Mr. Gillespie was a central architect of national Republican efforts to control the redistricting process in Ohio and guide state leaders toward creating a map to maximize the Republican share of Ohio's congressional delegation. His files are likely to include, among other things: (1) strategy memoranda and fundraising solicitations that describe the coordination between national and state Republicans and reveal their intent to entrench a Republican majority in the state's congressional delegation through unconstitutional means; (2) correspondence with Ohio state legislators, officials, and mapdrawers that describe the coordination between national and state Republicans and reveal their intent to entrench a Republican majority in the state's congressional delegation through unconstitutional means; and (3) invoices and budgets indicating that the RSLC and the SGLF funded Ohio Republicans' efforts to entrench a Republican majority in the state's congressional delegation through unconstitutional means. These documents clearly meet Rule 26's standard of relevance, in that they directly bear on Plaintiffs' constitutional claims.

The search parameters applied by Mr. Gillespie to date are unlikely to capture many of these documents. Plaintiffs allege that the RSLC began their campaign through REDMAP to win control of state legislatures that control congressional redistricting—including Ohio's—

11

shortly after the 2008 election, culminating in the November 2010 elections.  By limiting his

search to documents created on or after February 1, 2011, Mr. Gillespie has excluded from his

review the entire first phase of REDMAP, in which the RSLC sought to win Republican control

of the Ohio General Assembly for the express purpose of controlling the redistricting process.

Documents related to that campaign could be highly probative of state and national Republicans'

intent.  Indeed, the RSLC has already produced documents making clear that Ohio was a target

of REDMAP and linking Republican efforts to capture control of that chamber to creating up to

5 new GOP districts in the state.  Baker Decl., Ex. B at 3, 6.

Similarly, Mr. Gillespie's search to date would overlook documents that do not include

the terms "Ohio" and "redistrict!"  This would include, for instance, all correspondence with

Ohio Republicans that does not expressly state that Gillespie and state party officials are

discussing 2011 Ohio redistricting process.

Equally problematic is Mr. Gillespie's refusal to search all of his personal accounts for

responsive documents.  It is clear that he and other national Republicans used personal accounts

to discuss redistricting matters, and the RSLC already produced documents that contain

correspondence between Mr. Jankowski and Mr. Gillespie using their personal accounts.  For

example, one document produced by the RSLC shows that on June 15, 2010—seven months

before the start of the period Mr. Gillespie used for his review—Mr. Jankowski emailed Mr.

Gillespie at Mr. Gillespie's AOL email account concerning a REDMAP political report.  Baker

Decl., Ex. E.  In his email, Mr. Jankowski writes that the RSLC is striving to "update [] donors

on a monthly basis [about] our prospects to control the drawing on up to 25 swing congressional

seats," and he suggests showing donors slides that include information about the RSLC's efforts

to target "Tier 1 states," including Ohio, "to give [donors] some detail on what we see as

12

possible and why."  Mr. Jankowski's email thus expressly links the RSLC's fundraising for the 2010 election to its desire to control redistricting in states like Ohio.  *Id.*

Though this correspondence happened to be in the possession of the RSLC, neither the sender nor the recipients of the email used their RSLC email addresses, even though they were affiliated with the RSLC at the time.[3]  By excluding his AOL account from review, Mr. Gillespie will overlook similar documents in which he and other national Republicans used their personal emails for official correspondence.

### B.  Mr. Morgan Must Also Apply Plaintiffs' Proposed Search Terms

Ohio Republican officials retained Mr. Morgan as a redistricting consultant through their outside counsel.  Over the course of only a few months, Mr. Morgan billed Ohio Republicans for thousands of dollars' worth of services.  Invoices produced by Mr. Morgan characterize these invoices as "technical and *map drawing services*" related to the very maps at issue in this case. *See* Baker Decl., Ex. A ¶ 54; Ex. D.  For this reason, Mr. Morgan's files are likely to include, among other things: (1) communications with national Republican operatives concerning his work with Republican mapdrawers in Ohio; (2) communications indicating that his fees were paid for by national Republican organizations, consistent with Mr. Jankowski's letter to state legislative leaders; and (3) communications with Republican mapdrawers in Ohio indicative of their intent to entrench a Republican majority in the state's congressional delegation through unconstitutional means.

---

[3] Counsel for the RSLC and SGLF informed Plaintiffs at the August 8 meet and confer that the document production was one that they had made in another redistricting litigation.  *See* Baker Decl. ¶ 8.  Plaintiffs presume that these personal email accounts were properly searched in compliance with any document request in that other litigation.

Unlike Mr. Gillespie, Mr. Morgan has not shared his search parameters.  Instead, he has offered Plaintiffs only vague assurances that "he searched his physical and electronic files for documents related to the Ohio congressional redistricting following the 2010 census."[4]  That is not sufficient.  Mr. Morgan only identified 11 responsive documents, in addition to a data set, for the entirety of his engagement by Ohio Republicans to help draft the very maps at issue in this case.  *See* Baker Decl. ¶ 14.  Without knowing whether Mr. Morgan searched across a broad enough time frame, and included documents hitting on enough search terms, Plaintiffs cannot determine if Mr. Morgan has complied with his obligations under the subpoena.  Given the paucity of Mr. Morgan's document production, and the vague representations of the scope of his search, Plaintiffs do not believe that he has.[5]

III.    **Production of Mr. Gillespie's and Mr. Morgan's Files is Proportionate to the Needs of This Case**

Mr. Gillespie and Mr. Morgan possess relevant information within the meaning of Rule 26.  Therefore, it is their burden to demonstrate why production of that information is not proportional to the needs of the case.  *See U.S. ex rel Shamesh*, 314 F.R.D. at 8.  The have failed to meet that burden.  To date, they have proffered two objections to expanding their search for responsive documents.  First, they have suggested that documents responsive to expanded search parameters are likely to be duplicative of documents available in the productions of other

---

[4] Mr. Gillespie and Mr. Morgan have repeatedly said they searched for materials related to the "Ohio congressional redistricting following the 2010 census" without explaining how they are interpreting that phrase.  *See, e.g.,* Baker Decl., Ex. O at 2, 4.  Mr. Gillespie and Mr. Morgan must search for documents that respond to the documents requests contained in the subpoenas, not documents that relate to a phrase of their own choosing.

[5] Plaintiffs note that Mr. Morgan still does have emails related to the Ohio redistricting process, as he included an email on his privilege log.  *See* Baker Decl., Ex. F.  Plaintiffs do not yet have enough information to properly assess this privilege claim and are waiting for a response to their request for more information.  *See* Baker Decl. Ex. Q.

custodians.  *See, e.g.*, Baker Decl., Ex. O (regarding review of additional documents in Gillespie's files).  Second, they assert—with no support—that the effort and cost associated with complying with Plaintiffs' requests is unduly burdensome, and thus not proportionate to the needs of the case.  *See, e.g.*, Baker Decl., Ex. R at 3 (regarding hiring an e-discovery vendor to apply search terms to Mr. Morgan's files).  Neither objection establishes a lack of proportionality.

   A.   **Mr. Gillespie's and Mr. Morgan's Claims that Relevant Documents in Their Files Are Likely Duplicative of Those in Other Persons' Files is Insufficient to Establish a Lack of Proportionality**

Mr. Gillespie argues that conducting a broader review of his files is likely to result in the review of documents duplicative of those produced by other subpoena recipients, namely the RSLC.  But the possibility of duplication between custodians does not establish a lack of proportionality.  *See, e.g., United States v. AT&T Inc.*, No. 1.11-cv-01560, 2011 WL 5347178, at *1 n.4, 5, 7–8 (D.D.C. Nov. 6, 2011) (granting a motion to compel documents from additional custodians because the "mere facts of involvement of some additional custodians or some amount of necessary legal review are insufficient to demonstrate undue burden").  Moreover, as discussed, documents already produced indicate that Mr. Gillespie used a personal email address to communicate with other national Republicans about redistricting, and thus his files are likely to possess unique documents not contained in the RSLC's files.  Responsive documents sought or received by Gillespie using that account will only be captured in the RSLC's files if someone with an RSLC account received *all* of that correspondence, or if they were collected and produced in separate litigation.  Mr. Gillespie has not established that to be the case, and his barebones assertion that it is the case is insufficient.

Mr. Morgan argues that conducting a broader review will result in an effort duplicative of the his earlier review.  However, Mr. Morgan has not shared the parameters he used for his

earlier review of 12 non-email documents and data, and therefore cannot meet his burden of showing that Plaintiffs' request is not proportional to the needs of the case.  *See Moore v. Napolitano*, No. CIV.A. 00-953 (RWR/DAR), 2009 WL 2450280, at *4 (D.D.C. Aug. 7, 2009) ("Courts entertain overbreadth and undue burden objections only when the responding party demonstrates how a request is overly broad or unduly burdensome.  A responding party cannot merely state, in conclusory fashion, that a request is overbroad or unduly burdensome." (internal quotation marks and citations omitted)).

> **B.**     **The Cost of Complying with Plaintiffs' Subpoenas is Slight in Comparison to Issues in the Case and the Significance of the Requested Files in Resolving Those Issues**

Mr. Gillespie and Mr. Morgan also say that conducting a broader review of their documents will be costly and an undue burden.  However, neither Mr. Gillespie nor Mr. Morgan has attempted to quantify the cost or burden associated with expanding their review, or agreed to Plaintiffs' request for an estimate of the number of documents in their possession that hit on each of Plaintiffs' search terms.  They therefore have not met their burden of showing that complying with Plaintiffs' requests would be too costly.

Moreover, any cost associated with reviewing these documents is clearly outweighed by the other Rule 26 proportionality factors favoring disclosure:

- The issues in this case concern Plaintiffs' constitutional rights, and, potentially, the constitutional rights of millions of Ohioans.

- The "information asymmetry" favors disclosure, because Mr. Gillespie and Mr. Morgan are in possession of relevant, unique information that is not otherwise available to Plaintiffs.  *See, e.g., Oxbow*, 322 F.R.D. at 8 (holding that "'information asymmetry'—a circumstance in which one party has very little

discoverable information while the other party has vast amounts of discoverable information" militated in favor of disclosure).

- The issues at stake—the intent of state and national Republicans to discriminate against Plaintiffs based on their voting habits and associations—goes to the "heart of the litigation."  *Id.*

Accordingly, Plaintiffs' motion should be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion, and compel Mr. Gillespie and Mr. Morgan to produce their files within fourteen (14) days.

Dated: September 6, 2018

*/s/ Perrin Cooke*
Perrin Cooke (DC Bar #1030061)
Michael Baker *(*DC Bar #1044327; admission pending)
Covington & Burling LLP
One City Center
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
pcooke@cov.com
mbaker@cov.com
kdemers@cov.com
rday@cov.com

Robert D. Fram
Jeremy Goldstein
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
(415) 591-6000
rfram@cov.com
jgoldstein@cov.com

T. Alora Thomas-Lundborg
Dale E. Ho
Theresa J. Lee
Emily Rong Zhang
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
athomas@aclu.org
dho@aclu.org
tlee@aclu.org
erzhang@aclu.org

Freda J. Levenson
American Civil Liberties Union of Ohio Fdtn.
4506 Chester Avenue
Cleveland, OH 44103
(216) 472-2220
flevenson@acluohio.org

*Counsel for Movants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2018, a true and correct copy of the foregoing was

served via certified mail at the following addresses:

Edward Gillespie
9382 Mount Vernon Circle
Alexandria, VA
22309-3219

John Morgan
7323 Inzer Street
Springfield, VA 22151

A courtesy copy was also sent via email to counsel for Respondents at:

kmcknight@bakerlaw.com.

*/s/ Perrin Cooke*
Perrin Cooke (DC Bar #1030061)

*Counsel for Movants*